[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S APPEAL
This matter is a statutory appeal brought by Ms. Lagasse, the claimant, from the denial of unemployment benefits. An administrator ruled she was ineligible finding that the claimant on May 5, 1995 left suitable work voluntarily and without sufficient cause. This decision was appealed to an appeals referee who affirmed the administrator's decisions after a de novo hearing. An appeal was then taken to the Board of Review which first determined there was good cause for the late filing, held a hearing on the merits and then adopted the findings of the Appeals Referee and affirmed his decision denying benefits.
The claimant then filed a motion to reopen asserting she had additional evidence to present that had not been considered in the previous hearings. The Board dismissed the claimant's motion to reopen and the claimant has now appealed the decision of the Board of Review to the court.
In Johnson v. Administrator, 3 Conn. App. 264, 267 (1985) the court said:
 "It is axiomatic that the power of the trial court in appeals of this kind is very limited: `The Superior Court does not try the matter de novo; it is not its function to adjudicate questions of fact, nor may it substitute its own conclusions for those of the board. . . . Rather it is the function of the court to determine, on the record `whether these is a logical and rational basis for the decision of the (board) or whether, in light of the evidence, (the board) has acted illegally or in abuse of (its) discretion'. . . ."
There was ample basis in the record for the appeals referee to have found the claimant left work voluntarily. In the report CT Page 9606 filed in conjunction with the request for benefits the claimant herself stated she gave her employer a five month notice and told her she was not returning to work. She said the reason she was leaving was that she was pregnant and she did not intend to return to work. She said the job itself was suitable.
At the hearing before the appeals referee the claimant under oath confirmed the above information. The following also occurred as set forth in the transcript which this court requested:
 "Referee: You're both telling me the same thing. In, I guess it was January, you gave notice, said you were going to leave, worked out your notice and left as scheduled.
Correct?
Claimant: Yes.
 Referee: You were allowed to work your notice. Right?
Claimant: Yes.
 Referee: Did you ask for a leave of absence from your duties til such time?
Claimant: No.
Referee: Why not?
 Claimant: Because I didn't think I was going to return to work there."
Based on the court's review of the record, the denial of compensation benefits was consistent with the facts and the law. See § 31-236(a)(2)(A) and Reg. Conn. State Agencies § 31-236-17.
The claimant's chief contention is not so much that there was no basis for the decisions of the administrator or appeals referee or the decision of the Board confirming these decisions given the facts and circumstances presented to them.
The claimant, who is an articulate and intelligent woman, CT Page 9607 who represented herself before the agency and in court, rather argues that the Board should have granted her motion to reopen the case based on new information she submitted to the Board in the form of a letter which is a part of the record.
The Board denied the motion to reopen the case and set aside the decision. Section 31-249a(b) allows a decision to be reopened "on the grounds of new evidence or if the ends of justice so require upon good cause shown."
In United Parcel Service, Inc. v. Administrator, 209 Conn. 381,385 (1988), the court said that if the issue is one of law "the court has the broad responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically followed from such facts." The court went on to note that a court cannot substitute its own conclusions for those of the board but it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion. Even if the Board's decision here involved an issue of law, the court is confined to the record and cannot conclude the Board abused its discretion.
As a basis to reopen the decision of the Board because of newly discovered evidence the claimant submitted a lengthy letter previously referred to. In that letter she said that she told her employer about her pregnancy and asked her to keep it confidential but her request was not honored. She said she told the employer in January 1995 that her doctor instructed her not to work and have bed rest but was told that Workers' Compensation' would not be available to her. The claimant refers to working conditions where she was made to work in a cold area while she was pregnant and the condition was corrected only when she threatened to quit the job. She claims she was harassed as a result of her pregnancy. Her basic contention is that she could have been collecting unemployment in January if she had not been misinformed by her employer about its availability. She also said while this pursuit of her benefits claim was going on a former coworker visited her and said the boss wanted all the employees to sign a letter saying she, the claimant, left employment voluntarily. He allegedly said, "I didn't believe in it, Jackie, but it was my job."
In her letter and her application to the Board to reopen the claim she describes herself as being "gullible" and asserts she CT Page 9608 "had no idea how specific or detailed you must be," in making a claim for benefits.
This is a difficult case because the claimant is an intelligent, articulate person with a sympathetic story to tell. She very well may be giving an accurate version of what happened here and, if the facts she narrates were true, then the denial of her claim might very well have been improper. But of course as a court reviewing the matter on appeal, access to what may be the other side of the story or a means to evaluate conflicting factual claims is not available.
The problem here is that, based on the record before the court, it cannot be said that the Board acted arbitrarily or abused its discretion. There is no apparent reason why this claimant could not have told her present story to the administrator of the appeals referee. She now says that she did not know how much detail she had to go into. But there is no evidence offered or claim made that she was not given an opportunity to make any statement she wanted. From her letter to appearance in court, this woman impresses one as intelligent and articulate and quite voluble about her claims. The court purposely ordered a copy of the transcript before the appeals referee and there is no indication in that transcript that she was prevented from telling her story or giving her version of what happened. Her testimony in some senses contradicts the position she now takes. She describes her job as "suitable"; she indicates she gave her employer five months' notice and worked through May 5, 1990.
As indicated previously, the transcript before the appeals referee also indicates the referee asked the claimant why she did not ask for a leave of absence. She did not allude to her physical condition or the fact that she was told that she could not collect benefits but merely responded she did not ask for the leave because she didn't think she was going to return to the job. Regarding her physical condition she also submitted two statements from her doctor which in themselves are interesting. One dated September 5, 1995 states the claimant was delivered May 20, 1995 and during the "last several weeks of her pregnancy developed toxemia and elevated B/P" and was thus advised to limit herself to bed rest. She left her job May 5, 1990 and this note is not inconsistent with positions the claimant herself took that she announced several months before her delivery date that she was going to leave and was planning to move to a new job. CT Page 9609
But, in a note from the doctor dated January 12, 1996, it says that on January 10, 1995 the claimant was placed on a toxemia watch and was advised to maintain rest at home. The second note appears to offer a different time reference as to when the doctor requested her to stop work.
Furthermore, the administrator, when he first rendered his opinion on July 22, 1995, indicated one of the reasons the claim was denied was that the claimant's reason for leaving was "not related to the work itself." This should have indicated to the claimant that if her pregnant condition made it difficult to continue to work she could not be held to have left work voluntarily. But she did not advance this argument before the appeals referee at the September 5, 1995 hearing. The appeals referee rendered his decision upholding denial of the claim on September 8, 1995. The appeal was filed to the Board on October 2, 1995. A note dated October 3, 1995 is the first time any communication from the claimant was received by the Board alluding to her present factual claims. Also, there is no indication that at the time the claimant made her claim before the administrator or appeared before the appeals referee that she was under any type of threat or coercion or that her physical condition prevented her from fairly advancing her claim. Cf.Kronberg v. Administrator, 36 Conn. Sup. 210, 212 (180).
Given all these circumstances, it is difficult to conclude that the Board abused its discretion in failed to reopen its decision or, using the statutory language, that justice requires such a result. Also, it is clear that the evidence offered by the claimant to now reopen the case was not "new" — all of the information now sought to be presented was available when the claim was initially made and its relevance was apparent in July 1995 when the administrator made his decision. The appeal is denied.
Corradino, J.